CHARLES J. SCHUCK, Judge,
dissenting.
Under the facts as shown by the record and as governed by the law, I find myself in disagreement with the opinion rendered by the majority and feel that to carry out the conclusion therein set forth would be a miscarriage of justice.
A reading of the record reveals that Ray was the agent of the state road commission and as such agent had the right to contract for lumber to be used in the construction and maintenance of bridges along the state roads and highways in Clay county. The state at no place in the record repudiates the relation with Ray as its agent in the purchase of the lumber in question.
The majority opinion is based upon the proposition of law that one deals with an agent at his own peril. This proposition in my judgment, has no application whatever to the facts as shown in the hearing of these claims. Ray had the right to make the contracts in question; he was not exceeding his authority in making them; his agency has not been denied nor have his powers of contract been disputed in any way so far as this record reveals. In fact, it was these very contracts that he had made with these claimants, that brought about the delivery of the lumber in question necessary to carry on the projects of road improvement in which the state, through the state road commission, was then engaged. These were executed contracts and the work of the agent, Ray, accepted by the state and consequently binding upon it. The question here is plainly not what power did Ray possess, but rather did the state accept and receive the benefit of the contracts made with these claimants. The law which the majority *186 seeks to impose in this matter contemplates a case in which, by reason of the agent exceeding his authority, no contract exists that will bind the principal. Such is the sum and substsince of the decision in Rosendorf v. Poling, 48 W. Va. 621, and used as the basis for the majority opinion. There the agent sought to make a contract beyond his powers which was repudiated by his principal, and which repudiation was sustained by the court. That law is not applicable to these claims. The agent Ray did not exceed his authority. He had the right to make the contracts in question, as he did make them, and in all justice and equity the state has the obligation to pay these claimants what is fairly due them for the materials and the lumber they furnished and which the state accepted and is using.
The majority opinion indicates that Ray was not acting on behalf of the state. In the name of common sense for whom was he acting — wasn’t it by reason of his acts that the state obtained the lumber, used it in the construction of the bridges and roadways, and has been receiving the benefit of the material since that time? It is not true that Ray was merely the superintendent of prison labor in Clay county. He had full authority for contracting for the lumber which was used on the bridges and roadways by the state road commission. These facts are not denied and stand out boldly when one fairly reads the record as made in the presentation of these claims.
I repeat, these were all executed contracts. Whatever was done by the agent was accepted by the principal and therefore there is no application of the theory that one deals with an agent at his own risk, and to now allow the state to enjoy the benefits of these claimants’ labor and material which they furnished, without compensation is to my mind unwarranted and highly improper. The state especially should not be allowed to have the benefit of an unjust and illegal enrichment without paying for the material furnished. That there was fraud perpetrated upon the state in these transactions, there can be no question, but it was perpetrated not by these claim *187 ants, but by the state’s own agent, Ray himself; and we are well aware of the fact, that the fraud of the agent after obtaining the contracts in question cannot be chargeable in any manner to innocent persons with whom he contracted, but the damage, if any, must be borne by his principal.
Whatever was done by Ray after obtaining these orders cannot affect the rights of these claimants; and, by the way, since some question has been raised as to whether or not these small sawmill owners who are here involved, strictly complied with the law in the matter of submitting their offers to sell, notwithstanding the fact that the material was accepted, and used, by the state, let me say that in one instance, at least, as revealed by the testimony, namely that of Mullen, a bid was submitted through the accredited agent, Ray himself.
If after obtaining these bids and before the lumber was delivered, Ray planned some fraud with Mrs. Kinniston, and raised the price of the lumber, it was a fraud perpetrated upon the state by Ray himself, and as for these innocent claimants they cannot be held liable, for, so far as the evidence is concerned they had no connection whatsoever with such acts. The testimony reveals that they dealt with Ray in making these contracts and no one else. The undisputed testimony shows that Ray was the accredited agent of the state. The testimony fails to show the slightest repudiation of Ray’s powers. The testimony shows that these were executed contracts and not governed in any sense by the law sought to be applied in the majority opinion.
The testimony further shows that this lumber was accepted by the state and has been, used during all that period for the benefit of its roads and in the construction and maintenance of the bridges in question. The testimony shows (Lorentz record p. 40) that Ray was the agent and was carrying on the work of the road improvement in Clay county at the time.
*188 Considering all these circumstances and facts and the law-applicable, thereto, I would find that the claimants had sustained their claims and were entitled to awards accordingly.